HEARD NOVEMBER TERM, 1877.

## HAYES *vs.* CLINKSCALES.

Defendant gave his promissory note, payable 22d November, 1859. In October, 1869, he made a verbal promise to pay the note on a certain condition, which in March, 1874, was performed. This action was then commenced: *Held*, That the claim was not barred by the Statute of Limitations.

A verbal and binding promise to pay a debt, barred by the Statute of Limitations, on the performance of a certain condition, was made five months before the adoption of the Code of Procedure, and the condition was not performed until 1874: *Held*, That the claim was not within Section 96 of said Code.

An Act of the Legislature should not be so construed as to bring it in conflict with the Constitution, if such construction can possibly be avoided.

BEFORE REED, J., AT ANDERSON, OCTOBER, 1875.

Action by Baxter Hayes, administrator of John B. Armstrong, deceased, against Reuben Clinkscales.

·The case as gathered from the report of a Referee, to whom all the issues were referred, is as follows:

The action was to recover the amount of a promissory note for $681.45, given by the defendant to the plaintiff's intestate, due and payable November 22, 1859. In October, 1869, after the death of the intestate, the defendant made a verbal promise to the plaintiff to pay the note whenever he should be relieved from all liability as surety on certain guardianship bonds given by the intestate on the 16th of June, 1855, to the Commissioner in Equity for Anderson District. In March, 1874, the condition was performed, and on the 7th day of the same month this action was commenced.

The defense mainly relied upon was the Statute of Limitations.

The whole issue was referred to a Referee, who reported that in his judgment the case came within Section 96 of the Code of Procedure, and, consequently, that the action was barred by the Statute of Limitations.

His Honor made an order confirming the report, and the plaintiff appealed.

*Featherston & Brown*, for appellant:

Feeling assured that the Court will readily grasp the facts in this case from the pleadings and report, I will at once direct my argument to what is regarded by the Referee in his report to be the main point upon which this case must turn, to wit: the promise made to Mr. Whitner in October, 1869. This was a conditional promise, and, but for the condition annexed to the promise, the Referee and the Court below would have decided that it was not affected by Section 113 of our Code, which provides that "no acknowledgment or promise shall be sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this title, unless the same be contained in some writing, signed by the party to be charged thereby."

The decisions in reference to promises in order to revive debts barred by the Statute of Limitations prior to the adoption of the Code were to this effect: "That when a debt was not already barred by the Statute of Limitations, a slight acknowledgment was sufficient to revive it; but after it was barred, there must be an express promise to pay, which did not revive the debt, but gave a new cause of action, the old debt being the consideration for the

new promise."—See *Lomax* vs. *Robinson*, Dud., 366; *Sims* vs. *Radcliffe*, 3 Rich., 290; *Gowdy* vs. *Gillam*, 6 Rich., 290.

In the case of *Jones* vs. *Moore*, decided by the Supreme Court of Pennsylvania, (2 Browne R., 35,) Chief Justice Tilghman clearly expressed the law as it is now generally understood to be. He says: "If six years elapse after the cause of action accrued, there can be no recovery, although the debt is not extinguished but remains due in conscience and is a good consideration for a new promise." The law as fully established both in England and in this country is: 1st. That a debt barred by the Statute of Limitations may be revived by a new promise. 2d. That such new promise may be an express or an implied one. 3d. That such new promise may be created by a clear and unqualified acknowledgment of the debt.

But it is argued by counsel for respondent that in the case before us the promise was conditional, therefore not a good promise. In *Brown* vs. *Joiner*, (1 Rich., 212,) it was decided that if the promise is conditional it must be declared on specially and performance of the condition averred. In the case of *Grist* vs. *Newman*, (2 Bail., 92,) it was said by the Court: "I observe that a doubt is thrown out whether a debtor has the power to subjoin a condition to a promise to pay a debt barred by the Statute of Limitations; but I am satisfied there is nothing in it. There must be a promise to pay; a promise on condition does not bind until the condition is accepted and performed, if precedent. If, says Judge Story, in *Bell* vs. *Morrison*, (1 Pet., 351,) conditions are annexed to a promise to pay a debt barred by statute, they ought to be shown to be performed."

It has been held that an acknowledgment of a debt, if accompanied with a promise to pay conditionally, is of no avail unless the condition to which the promise is subjected by the defendant be complied with or the event has happened upon which the promise depends.—See Angell on Limitations, § 235. The same author further says: "Therefore, the cases wherein it has been held that if the condition accompanying the acknowledgment is complied with it will avail, and not otherwise, must go on the ground that the acknowledgment furnishes a new promise. In the words of Mr. Justice Story, in *Bell* vs. *Morrison*, 'springing out of, and supported by, the original consideration.'"

On page 127, the same author puts a case thus: If A promise B to pay him a sum of money if he will do a particular act, and B does the act, the promise becomes binding, although B at the time does not engage to do the act.

This statement furnishes a complete analogy to the case before us. The defendant promised to pay Mr. Whitner, who was agent for the plaintiff, the note sued on as the consideration for the new promise whenever the defendant should be relieved from all liability as surety from a certain guardianship bond. The plaintiff performed this condition, and although he may not have engaged to do so at the time of the promise, yet it became binding upon the defendant, and the old debt was a sufficient consideration therefor. It was in the power of the defendant to revoke his promise, but there is no proof that he did so; therefore, he was willing that the plaintiff should perform the condition at any time, and it was in law an offer renewed from day to day and from year to year.

This promise made to Mr. Whitner in October, 1869, was certainly a good promise at the time it was made, and it is difficult to conceive how the adoption of the Code could vitiate it, or, as it is argued by the respondent, make it a nullity without one note of warning to the plaintiff. Section 113 of the Code, requiring a written acknowledgment or promise as evidence of a new or continuing contract, whereby to take the case out of the operation of the Statute of Limitations, was not intended to be retrospective, as will appear from Section 96 of the Code, which enacts that the provisions of this title [referring to the Statute of Limitations] shall not extend to actions already commenced or to causes where the right of action has already accrued. This provision is clearly intended to except promises made before the Code. The Act of 9th George IV, known as the Lord Tenterden Act, gave all persons in possession of parol promises seven months and more in which to bring their actions founded on such promises. In Section 26 of the Referee's report, it is said that the English Courts were quite as scrupulous in impairing the obligation of contracts as we are. In reply, we say that if the Referee's construction of Section 113 of our Code is the correct one, then the enactment of 9th George IV (which gave seven months to persons in possession of parol promises in which to bring suits on such promises) was more liberal and scrupulous to avoid impairing the obligation of contracts than our own State in the enactment of Section 113 of the Code, for it does

not give one day for persons in possession of parol promises to bring their suits.

We maintain, however, that this provision of the Code is not retrospective in its operation, and is not intended to interfere with contracts or promises made before its enactment. There is a similar provision in the New York Code, [see Section 113 of said Code,] which was held to be wholly prospective.—See *Van Allen* vs. *Felty*, 1 Keys, 332; 9 Abb., 277.

" But," says the Referee, " it must be remembered that this was a *conditional promise,* and, being conditional, did not waive the bar at the time the promise was made, and that no cause of action existed at the time of the adoption of the Code."

It is true that when a conditional promise is made, that no suit on such promise can be brought until the condition is performed; but in Angell on Limitations, [see § 113, p. 127,] the doctrine is clearly announced that the Statute of Limitations is suspended between the time of the promise and the performance of the condition. Again: "That while a promise is suspended by a condition, the statute does not run from the time of making it, for no right of action accrues until the condition is performed."

In this case, the promise was made in October, 1869, more than four months before the adoption of the Code; and as the operation of the statute was suspended until the performance of the condition and relates back to the time of the promise and becomes binding, it would seem that the Statute of Limitations in existence at the time of the promise should govern, and not the statute in existence at the time of the performance of the condition, for in contemplation of law no time elapses between these periods. The 96th Section of our Code manifestly intended that every provision in that title respecting the Statute of Limitations should be prospective, and that rights and remedies that existed prior to the Code should not be divested. The plaintiff in this case could not have anticipated the action of the Legislature in changing the statute and have prepared himself for that event by requiring a written promise from the defendant. As the law existed at the time the promise was made, the plaintiff had a right to perform the condition, and to the benefit that would accrue therefrom, of which no legislative enactment could rightfully divest him. To hold otherwise would be to make the law retrospective in its operations. A retrospective law is defined to be a law which takes away or impairs vested rights,

or creates a new obligation, imposes a new duty, or attaches a new disability in respect to transactions already past.—See *Calder* vs. *Bell*, 3 Dallas (Penn.) Rep., 386; *Bush* vs. *Van Kleek*, 7 John's (N. Y.) Rep., 447.

If the Legislature of a State should pass an Act by which a past right of action should be barred, and without any allowance of time for the institution thereof *in futuro,* it would be difficult to reconcile such an Act with the express constitutional provision in favor of the rights of private property.—See *Jackson* vs. *Lamphire*, 3 Pet. (U. S.) Rep., 280; *Eckstein* vs. *Shoemaker*, 3 Wheat. (Penn.) Rep., 15; *Ward* vs. *Kilts*, 12 Wend. (N. Y.) Rep., 137.

In New Hampshire it was decided that an Act of the Legislature repealing an Act of limitations was, with respect to all actions pending at the time of appeal which were previously barred, to be retrospective and contrary to the State Constitution.—*Waart* vs. *Wurnock*, 3 N. H. Rep., 473.

In the case of *Patterson* vs. *Gaines*, (6 How., U. S., Rep., 550,) it is stated that "a statute of limitations may well apply to contracts in existence at the time of its passage, provided a reasonable time be allowed before the statute takes effect within which creditors may institute their actions."

To require the plaintiff in this case to produce written evidence of a new promise, signed by the party to be charged, when no such written evidence was required at the time the promise was made to bind the defendant, would clearly militate against the decisions both in the United States and State Courts, as will appear from the cases just cited. Before the promise made to Mr. Whitner, to wit, in December, 1868, the defendant made a promise to Mr. James A. Cowan similar to that made to Mr. Whitner, which was such a clear acknowledgment of his liability as that a promise might be implied therefrom. On the 10th day of March, 1870, the defendant substantially repeated his promise to Mr. Whitner, and again, on the 14th day of September, 1870, the defendant made a solemn admission and promise to pay the note in question whenever he was relieved from his suretyship on guardianship bond heretofore spoken of. It is evident from all of these promises that a weight of moral obligation was resting upon the defendant that was not easily to be borne, and from which he at that time did not wish to absolve himself, for we cannot think that he at the time intended to deceive the plaintiff by these promises, and thereby urge him to pay the bond, and then plead the Statute of Limitations.

As will be seen by reference to the report of Referee, the defendant stood in a confidential relationship to the wards of John B. Armstrong, and that this note had been transferred to said John B. Armstrong as part of the minors' estate. He, though a surety for John B. Armstrong, the intestate of the plaintiff, was also a debtor to him, which indebtedness, if it had been paid, would have gone very far towards the satisfying of said bond. In the forum of conscience the defendant has nothing to plead, save that the consideration of said note was for slaves; yet it is evident, from the section of the report just referred to, that the defendant did not purchase any slave or slaves from John B. Armstrong, the intestate; for he says that *the note was part of the estate* of the minors of the estate of William M. Cowan, and must, therefore, have been transferred by the administrator of the estate of William M. Cowan to John B. Armstrong. the guardian, who is held to account for the note, whilst the defendant, who was the maker thereof, must be freed from all liability.

If the consideration of said note was for the purchase of slaves, as set forth in the answer, and from the evidence of the defendant, then we maintain that the note was not barred by the Statute of Limitations at the time of the promise to Mr. Whitner in October, 1869. The Referee excludes the time during the operation of the Stay Law, from December, 1861, to December, 1866, from the operation of the statute; therefore, by analogy, the time during which the State Constitution prohibited suits being brought on slave contracts ought also to be excluded.

The State Constitution, ratified on the 16th day of April, 1868, (see Section 34, Article IV,) declares that "all contracts, whether under seal or not, the consideration of which were for the purchase of slaves, are hereby declared null and void and of no effect; and no suit, either at law or equity, shall be commenced or prosecuted for the enforcement of such contracts."

If the Stay Law disabled parties from bringing suit, and thereby prevented the operation of the statute, for a much greater reason the State Constitution, the fundamental law, prevented parties from bringing suit and suspended the operation of the statute until the decision in the case of *Calhoun* vs. *Calhoun*, at the April Term, 1870, when it was decided that slave contracts were collectible and removed the disability created by the said Section of the Constitution. If this view of the case is correct, then only the two years

and about one month that the note ran before the *Stay Law*, and the one year and about four months from the repeal of the Stay Law in December, 1866, until the ratification of the State Constitution, ought to be counted, and which would only make, in the aggregate, about three years and six months that the statute was operative.

By way of recapitulation, we insist—

1. That the promise made in October, 1869, was upon sufficient consideration; and that the Statute of Limitations did not run between the time of the promise and the performance of the condition.

2. That at the time of the promise a verbal promise was sufficient evidence of a new and continuing contract, and that the provision of the Code requiring written evidence of a new and continuing contract is not retrospective, but wholly prospective, and does not require any higher evidence than existed at the time the promise was made.

3. That if the consideration of the note was for the purchase of slave property, then the note was not barred by the Statute of Limitations when the verbal promise was made, because the State Constitution prohibited suit on slave contracts.

*McGowan & Moore,* contra:

First. The well-established difference between cases barred and not barred as to the effect and character of a new promise. When the case is already barred, the promise must be sufficient to *create a new cause of action.*

Second. The Code, as to promise in writing, applies to all promises, whether before or after the Code, only excepting "actions already commenced, or to *cases where the right of action has already accrued*" at the time of its adoption.

Third. All the promises alleged here were parol. It is admitted that they all were after the Code but the one alleged to Whitner, the attorney. At that time the cause of *action was barred clearly,* and the alleged promise *was conditional.* That did not create *a new cause of action* at that time; therefore, there was no cause of action, *either old or new,* at the time the Code was adopted.

Fourth. Then no subsequent promise would suffice unless in writing, by the express words of the Code.

Fifth. If the conditional promise created a cause of action which brought it under the exception of the Code, then *that cause of action* was also barred, because it was more than four years before condition performed.

March 30, 1878. The opinion of the Court was delivered by

McIVER, A. J. This action, which was commenced on the 7th of March, 1874, was brought to recover a sum of money originally secured by an ordinary promissory note, which was payable on the 22d of November, 1859. The defense relied upon was the Statute of Limitations, to meet which the plaintiff relied upon new promises. While it does not very clearly appear whether the action was brought upon these new promises as well as upon the original note, the language of the " case" as presented here being, " This action was brought on a promissory note and alleged new promises," and then sets out a copy of the note, we shall assume that the complaint set out several causes of action—the note and the new promises—inasmuch as no question has been raised here upon that point and none seems to have been raised below. The new promises were verbal, were all conditional, and all of them were made after the action on the note would have been barred by the Statute of Limitations, the earliest promise being some time in December, 1868. The complaint alleged performance of the condition upon which these promises were made on the 3d of March, 1874. The defendant contended that, as these new promises were not in writing, they were not sufficient to take the case out of the operation of the Statute of Limitations under the provisions of Section 133 of the Code of Procedure, because those made in March and September, 1870, were made after the adoption of the Code, and those made in 1868 and 1869, though made prior to the Code, were conditional, and therefore no right of action could accrue upon them until the condition was performed, which did not take place until after the adoption of the Code, inasmuch as, by the terms of that statute, its provisions were applicable to all cases, except where the action had already been commenced or where the right of action had already accrued, (Section 96 of the Code); and that as it was apparent that the action had not been commenced at the time of the adoption of the Code, and as the plaintiff's right of action had not then accrued, the condition not having then been performed, this case could not

be brought within either of the exceptions provided for in Section 96 of the Code. This conclusion the Referee, to whom the issues in the action were referred for trial, adopted, and his conclusion was confirmed by the Circuit Judge.

It will be observed that before any of the new promises were made the action on the note was barred, because the Statute of Limitations having been suspended for a period of precisely five years by the fifth Section of the Act of 1861, commonly called the Stay Law, (*Harllee & Pressly* vs. *Ward*, 15 Rich., 231,) the practical effect in cases like the present is to add just five years to the period fixed by the Statute of Limitations prior to the Code, and as this note became payable on the 22d of November, 1859, any action on it would have been barred on the 22d of November, 1868. The new promises being all made after that time, they could not, as the law then stood, have the effect of reviving or renewing the original contract embodied in the note, but must of *themselves* constitute new causes of action; for while the earlier cases may possibly have left this matter in some doubt, there is no doubt but that the more recent adjudications in this State have established the rule as above stated.—See *Smith* vs. *Caldwell*, 15 Rich., 365, and the cases therein cited. And this, we may be permitted to add, in strict conformity to the terms of the statute, which declares that the action shall be commenced within the time limited " *and not after.*" Hence the propriety of the rule that if action is brought after the expiration of that time, it should be not upon the original contract but upon the new promise, as a new and substantive contract.

The next inquiry is, whether the provisions of the Code, as cited above, can affect this case? As a matter of convenience, let us confine our inquiries to the promise made to Mr. Whitner in October, 1869, that being the one principally discussed in the Referee's report. When this promise was made, though the plaintiff's right of action upon the note was forever gone, and incapable of being revived, yet, the debt not having been paid, it constituted a valid consideration to support a new contract; for though the legal obligation was gone, the moral obligation remained, and that was a sufficient consideration to support the new promise.—*Reigue* vs. *Executors of Desportes*, Dud., 122; *Lomax* vs. *Robertson*, Dud., 366; *Sims* vs. *Radcliffe*, 3 Rich., 290; *Gowdy* vs. *Gillam*, 6 Rich., 29.

This promise, then, to Whitner was an entirely new contract, based upon a sufficient consideration, which the defendant became

liable to perform according to its terms. If the condition upon which the promise was made never happened, of course he would never be liable to fulfill his promise. When, however, the condition did happen, he forthwith became liable to fulfill his promise, and if he failed or refused so to do the plaintiff could bring his action. It is important to a proper understanding of this case to keep in mind what has been stated—that this promise constituted an entirely *new* contract, independent of the original note, except in so far as it furnished a valid consideration, and that such contract must be regarded as any other seperate and independent contract. Looking at it in this light, the practical question presented by this case is, whether the provisions of the Code can be allowed to import other elements into this contract, or, rather, whether additional formalities can be required, as essential to its validity, which were not required at the time the contracting parties entered into it. In other words, as the law stood when the plaintiff and the defendant entered into this contract, it was not necessary to its validity that it should be in writing. Is it competent, then, for the Legislature, by any subsequent legislation, to deprive such a contract of its validity by declaring that unless it is in writing it shall not be enforced? The bare statement of the question, when reduced to this form, would seem to afford a sufficient answer. The fact that the contract was upon a condition to be performed in the future cannot alter the result. The question with which we are concerned, and to which we must confine our attention, is as to the validity of the contract *when made.* Its breach is altogether another question.

One of the legal incidents which flow from every contract, and which inheres in it from the moment it is made, is that upon a breach of it an action accrues. This is an essential element of every contract, and if the Legislature, by any mode of legislation, undertakes, subsequent to the making of the contract, to deprive a party of this right, such legislation is null and void as impairing the obligation of the contract.—*State* vs. *Carew,* 13 Rich., 498; *Wood* vs. *Wood,* 14 Rich., 148.

Suppose A borrows a sum of money from B and executes to him a bond, conditioned to return the same whenever B does some act in the future, for example, as in this case; whenever B releases A from a liability which he has assumed as his surety, would any one contend that an Act of the Legislature passed after the execution of the bond, but prior to the performance of the condition, declar-

ing that such a bond should not be valid, or, to use the language of the Code, should not be sufficient evidence of such a contract unless it was executed in the presence of two subscribing witnesses, could apply to such bond? Why not? Because it would be importing additional requisites into the contract which were not necessary at the time it was made. So here, in October, 1869, when this promise was made, or when this contract was entered into, it was quite as valid and complete in a verbal form as if reduced to writing with all possible solemnities, and the Legislature has no power, by an Act passed 1st March, 1870, to declare such a contract invalid or incapable of being enforced unless it is reduced to writing. It may, however, admit of a question whether the Legislature has ever undertaken to do so. And as it is the duty of a Court, in construing Acts of the Legislature, to put such a construction upon them, if possible, as will avoid giving them retroactive operation (13 Rich., 277,) or bringing them into conflict with any constitutional provision, let us examine the provisions of the Code which are relied upon in order to see if such results can be avoided. The important inquiry is, what is the proper construction to be placed upon the words "right of action," as used in Section 96 of the Code? Do they mean the right *to bring the action* or do they mean *the primary right*, which is the foundation upon which the cause of action rests? The Referee and the Circuit Judge must necessarily have construed them to mean the former, for their whole decision rests upon the argument that the provisions of the Code requiring the promise (which is relied upon to take the case out of the operation of the Statute of Limitations to be in writing) applies to the case, because the right of action, that is the right *to bring the action*, had not accrued at the time of the adoption of the Code, inasmuch as the action could not have been commenced until after the performance of the condition, and that having happened after the adoption of the Code the case could not be brought within the excepting words of Section 96 of the Code. But, as we have seen, this construction not only gives the Code a retroactive operation, but brings it in conflict with the constitutional provisions designed to prevent any legislation which would impair the obligation of contracts. We must, therefore, seek for some other construction.

Pomeroy, in his very valuable work on Remedies and Remedial Rights by the civil action, according to the *Reformed American Procedure*, inquiring into the true meaning of the words " cause of

action," after telling us in Section 452, page 486, that "the American Courts of the present day seem to avoid the announcement of any general principle or the giving of any general definitions," proceeds in Section 519, pages 554–5, to say: "Every action is based upon some primary right held by the plaintiff and upon a duty resting upon the defendant corresponding to such right. By means of a wrongful act or omission of the defendant this primary right and this duty are invaded and broken, and there immediately arises from the breach a new remedial right of the plaintiff and a new remedial duty of the defendant. Finally, such remedial right and duty are consummated and satisfied by the remedy which is obtained through means of the action and which is its object. Now, it is very plain that, using the words according to their natural import and according to their technical legal import, the 'cause of action' is what gives rise to the remedial right or the right of remedy, which is evidently the same as the term 'right of action' frequently used by Judges and text writers. This remedial right, or right of action, does not arise from the wrongful act or omission of the defendant—the delict—alone, nor from the plaintiff's primary right and the defendant's corresponding primary duty alone, but from these two elements taken together. The 'cause of action,' therefore, must always consist of two factors—(1) the plaintiff's primary right and the defendant's corresponding primary duty, whatever be the subject to which they relate, person, character, property or contract; and (2) the delict or wrongful act or omission of the defendant, by which the primary right and duty have been violated."

If the words "right of action," as used in Section 96 of the Code, be given a secondary signification, as is not only allowable but proper, in order to avoid a conflict with any constitutional provision, and be construed to mean the primary right, which constitutes one of the foundations of the cause of action, and not the remedial right which flows from such primary right held by the plaintiff and the breach of the primary duty resting upon the defendant, which would seem to be their technical legal import, then the statute would not conflict with any constitutional provision and would not be liable to the charge of being retrospective legislation. The primary right which accrued to the plaintiff upon the making of the promise in 1869 would be left unimpaired and unaffected by any subsequent legislation; for, in this sense, the right of action

had accrued prior to the adoption of the Code, and therefore the case comes within the exception mentioned in Section 96, and it was not necessary that the promise should be in writing.

The position taken, that the action not having been brought within four years after the making of the promise in 1869 is barred by the Statute of Limitations, cannot be sustained. The promise being conditional, no action could have been commenced upon it until after the condition was performed, and therefore the statute could not commence to run until that time; for in such a case it would be necessary to allege and prove the performance of the condition.—*Brown* vs. *Joyner*, 1 Rich., 210; *Bangs* vs. *Hall*, 2 Pick., 368; *Wetzell* vs. *Bussard*, 11 Wheat., 309.

The judgment of the Circuit Court must be set aside and a new trial had.

Motion granted.

*Willard*, C. J., and *Haskell*, A. J., concurred.